IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICIA A. WARMACK, )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>QUALITY PACKAGING SERVICES, )<br>INC.; HEATHER CREEK, individually )<br>and in her capacity as human resource )<br>director; CHRIS ZIACOLA, individually )<br>and his capacity as operation manager; )<br>and TAMARA POWELL, individually )<br>and in her capacity as plant manager, )<br>)<br>Defendants. ) | No. 3:16-cv-00587<br><br>**PLAINTIFF DEMANDS<br>TRIAL BY JURY** |

## COMPLAINT

*Americans With Disabilities Act*
*Disparate Impact, Failure to Accommodate and Retaliation*

COMES NOW Plaintiff, PATRICIA A. WARMACK, by and through her undersigned attorneys, and for her complaint against defendants states as follows:

1. This action is brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C.S. §12101 et. seq.

2. Jurisdiction and venue are proper in this Court pursuant to this Court's Federal Question Jurisdiction, 28 USC §1331, as this matter is brought pursuant to the federal law known as the ADA and the discriminatory /retaliatory acts alleged herein occurred in this judicial district; explaining further plaintiff states as follows:

   a. Plaintiff filed a timely charge of disability discrimination and retaliation with the EEOC on or about September 4, 2015- EEOC charge no. 560-2015-01930.

      b. Plaintiff received a Notice of Right to Sue on March 1, 2016 from the EEOC; plaintiff has filed suit within the 90-day window provided for by law for bringing suit in federal court.

      c. The unlawful employment practices and the illegal discrimination and retaliation alleged herein occurred in Madison County, Illinois, which is an Illinois County in the judicial circuit which comprises the Southern District of Illinois.

3. Plaintiff became employed by defendant Quality Packaging Services, Inc. ("QPS") in December of 2009; plaintiff worked for QPS as a production supervisor.

4. At all relevant times from the date defendant hired plaintiff to the date defendant fired plaintiff, plaintiff successfully performed the essential functions of her job and met and exceeded defendants' reasonable job expectations.

5. In 2014, the Edwardsville plant obtained a new contract for business for an international customer and the work hours dramatically increased for plaintiff. This new contract followed a multi-year period of slow business for QPS and was essential for the survival of the plant. Plaintiff and other existing employees were expected to work long, grueling hours to service this particular account.

6. In approximately April of 2014, QPS forced plaintiff to switch from hourly pay to salary. Plaintiff was told if she did not accept the salary versus hourly payment, her position would be eliminated.

7. From June of 2014 through October of 2014, plaintiff worked between 75-80 hours per week.

8. In October of 2014, plaintiff was placed on sick leave by her physician due to rapid weight loss, fatigue and severe anxiety (plaintiff went from 121 pounds to 95 pounds).

9. Plaintiff notified defendant Creek that she needed some time off work to undergo testing pursuant to her physician's orders to determine the cause of her symptoms. Defendant

Creek told the plaintiff that she (Creek) would need a specific diagnosis for her absence to be excused. Plaintiff told Creek that she did not have a diagnosis and that was why she needed to be excused to undergo the physician recommended testing. Plaintiff requested that Creek send the FMLA paperwork directly to her physician to which Creek instructed the plaintiff to come in and get the paperwork. Subsequently, plaintiff's doctor drafted a letter insisting that the plaintiff undergo blood work.

10. Plaintiff sent an email to defendant Ziacola asking for a day off to complete the blood work testing recommended by her physician. Defendant Ziacola never responded, so the plaintiff reported to work and asked defendant Ziacola in person to leave work to have her blood work completed. Defendant Ziacola told the plaintiff to talk to defendant Creek in human resources. Plaintiff then went out on the production floor and asked defendants Powell, Creek and Ziacola if she could leave work to have her blood work completed, and the defendants told her she would need to stay at work until 4:30 p.m. or 5:00 p.m. that day. Plaintiff continued to stress the importance of getting her blood work tested and defendants agreed to let her leave, but told her the time off would be without pay and that she would not be allowed to leave for anything else in the future.

11. Plaintiff was severely ill and unable to report for work from approximately October 1, 2014 until November 3, 2014. Plaintiff experienced difficulty with major life activities including eating, sleeping, walking, working, and caring for herself; plaintiff was disabled as that term is used in the ADA; plaintiff had disabling impairments and was considered at relevant times by defendants to be disabled and suffering from significant impairments in many areas of major life activities.

12. Despite her life-threatening condition, none of the defendants contacted her or expressed any concern for her physical well-being during her medical leave.

13. When plaintiff returned to work on November 3, 2014, she asked defendant Ziacola to go over the changes that had taken place during plaintiff's medical leave, and defendant Ziacola told plaintiff "I don't have time." Plaintiff went about her job duties as she previously had done. On November 5, 2014 a master lead asked plaintiff if she could switch a person and plaintiff gave her permission, because this practice had always been acceptable. Defendant Ziacola told the plaintiff that she was no longer allowed to switch people, yet plaintiff had not previously been informed of this policy change.

14. On or about November 5, 2014, a master lead by the name of Ladebra Simpson told the plaintiff that she was offered plaintiff's job while the plaintiff was on medical leave, but Ms. Simpson refused the job because of the excessive hours.

15. On November 7, 2014, plaintiff made a complaint to defendant Creek that she believed she wasn't being treated fairly since returning from medical leave, and recent changes in policy were purposely being withheld from her. Additionally, she complained to defendant Creek that she felt the defendants' behavior towards her was in direct retaliation for being out on sick leave and her previous complaints of excessive work hours to the defendants.

16. On or about November 10, 2014, defendants Powell, Ziacola and Creek were overheard by the assistant quality manager discussing the hiring of a new production supervisor to replace plaintiff and start work on November 11, 2014.

17. The defendants personally observed the plaintiff's deteriorating health condition from January of 2014 through November of 2014, but instead of being supportive of plaintiff's loyalty to her job, defendants made it difficult for plaintiff to seek the proper medical treatment.

18. The defendants denied plaintiff time off to be tested and denied the plaintiff adequate time for rest. The defendants intentionally withheld policy changes from plaintiff which made her feel out-of-the-loop and inferior at her job. If plaintiff would ask questions regarding policy, she was instructed to find out the information from her subordinates and defendants started refusing to communicate with the plaintiff regarding work related issues. The defendants intentionally withheld recent policy changes from plaintiff so that they could "catch" the plaintiff violating a company policy or rule.

19. On or about November 11, 2014, defendants discharged the plaintiff. Defendants' discharge of plaintiff was pretextual, discriminatory and retaliatory. The defendants attempted to create a legal justification for plaintiff's termination by writing her up during the last 7 months of her employment for improper management style. The plaintiff continually objected to defendants' accusations and maintained that she was satisfactorily performing her duties. The plaintiff had not been written up prior to 2014 for this issue. Defendants' accusations regarding the plaintiff's management style only came after the plaintiff complained about the sudden increase in hours and the effects of the long hours on her health. Plaintiff was terminated just 7 days after returning from a 33-day medical leave.

20. Defendants never discussed with plaintiff reasonable accommodations, so that plaintiff could perform her duties at work and still receive the proper medical care and treatment. Defendants discriminated against plaintiff because of her disability, perceived disability, history of illness, and the defendants terminated plaintiff's employment in violation of the Americans with Disabilities Act.

21. The defendants retaliated against the plaintiff when she resisted or opposed their violations of the Americans with Disabilities Act.

22. Plaintiff has suffered loss of income and benefits, emotional distress and humiliation caused by defendants' discrimination, retaliation, and termination of her employment.

23. Plaintiff has incurred attorneys' fees, costs, and expenses in bringing this claim, and plaintiff is entitled to recover her attorneys' fees, costs, and expenses pursuant to the ADA.

24. Plaintiff seeks injunctive and compensatory relief as the Court deems right and just and an order from the Court enjoining defendants from further violations of the ADA.

25. Defendants are employers as that term is used in the ADA and defendants are required by the ADA to comply with the statutory requirements of the ADA.

WHEREFORE, plaintiff respectfully requests this Court find in her favor and against the defendants, award her compensatory damages for her loss of income and benefits and emotional distress, attorneys' fees, costs and any injunctive relief this Court deems just and proper in this matter.

Respectfully Submitted:

PATRICIA A. WARMACK

By: *[signature]*

Emily J. Johnson, #6286497
Hunter & Johnson, P.C.
5213 Mae Drive, Suite B
Godfrey, Illinois 62035
Phone: (618) 466-9510
Fax: (618) 466-9540
ejohnson@hunterjohnsonlaw.com